500 A.2d 85

COMMONWEALTH of Pennsylvania, Appellee,

v.

Anthony L. LETA, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Frank Richard PRICCI, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Joseph O. BALDASSARI, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 17, 1984.

Filed Sept. 13, 1985.

Reargument Denied Nov. 18, 1985 in No. 2261.

Peter T. Campana, Williamsport, for appellant (at 1390).

William T. Hall, Scranton, for appellant (at 1422).

James M. Zipay, Scranton, for appellant (at 2261).

Peter J. Hart, Philadelphia, for Commonwealth, appellee.

Before WIEAND, DEL SOLE and POPOVICH, JJ.

WIEAND, Judge:

Frank Pricci and Joseph Baldassari of Scranton, Pennsylvania, and Anthony Leta of Williamsport, Pennsylvania,

were tried nonjury before the Honorable Albert E. Acker, specially presiding, and were found guilty of bookmaking [1] and criminal conspiracy.[2] At trial, the Commonwealth relied upon incriminating evidence acquired by placing a tap on several telephones serving appellants' respective premises. On direct appeal, the principal arguments made by appellants are that the Pennsylvania Wiretapping and Electronic Surveillance Control Act of October 4, 1978, P.L. 831, No. 164, 18 Pa.C.S. § 5701 et seq., is unconstitutional and, if valid, that it was improperly applied against them. We find no merit in these arguments and affirm.

■ The law is well settled that statutes duly enacted by the legislature are presumed to be constitutional. *Estate of Cox,* 327 Pa.Super. 479, 485, 476 A.2d 367, 370 (1984) and cases cited therein. A statute will not be held unconstitutional except upon a showing that the statute is "clearly, palpably and plainly" in conflict with constitutional provisions. *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 155, 425 A.2d 419, 421 (1981).

■ Baldassari contends that the Pennsylvania Act is in violation of the United States Constitution's Fourth Amendment. He argues that the Pennsylvania statute is modeled after Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., which was held unconstitutional in *United States v. Whitaker,* 343 F.Supp. 358 (E.D.Pa.1972) because of a lack of specificity. However, *Whitaker* was subsequently reversed by the Third Circuit, *United States v. Whitaker,* 474 F.2d 1246 (3rd Cir.1973), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3003, 37 L.Ed.2d 1006, and is not controlling of our decision. Other circuit courts have upheld Title III in the face of various constitutional challenges. See: *United States v. Turner,* 528 F.2d 143 (9th Cir.1975), *cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371; *United States v. John,* 508 F.2d 1134 (8th Cir.1975), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1948,

1. 18 Pa.C.S. § 5514.
2. 18 Pa.C.S. § 903.

44 L.Ed.2d 448; *United States v. Sklaroff,* 506 F.2d 837 (5th Cir.1975), *cert. denied,* 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105; *United States v. Ramsey,* 503 F.2d 524 (7th Cir.1974), *cert. denied,* 420 U.S. 932, 95 S.Ct. 1136, 43 L.Ed.2d 405 (1975); *United States v. Tortorello,* 480 F.2d 764 (2nd Cir.1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86; *United States v. Fino,* 478 F.2d 35 (2d Cir. 1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974) and *United States v. Cafero,* 473 F.2d 489 (3rd Cir.1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974).

Moreover, although the United States Supreme Court has never directly decided the constitutionality of Title III, it has decided numerous issues raised under the Act and has never even intimated that the law was invalid. *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977); *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974); *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) and *United States v. Kahn,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). Contrary to Baldassari's urgings, we decline to adopt the view of the United States District Court in *Whitaker.*

Leta contends that the Pennsylvania Constitution prohibits all nonconsensual wiretaps. This challenge to the Act's constitutionality was considered recently by this Court and rejected. *Commonwealth v. Doty,* 345 Pa.Super. 374, 498 A.2d 870 (1985); *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438, 457 (1985). The contention advocated by Leta and Baldassari that the Act is less restrictive than Title III and is thus in conflict with the United States Constitution's Supremacy clause was also rejected in *Commonwealth v. Doty, supra.*[3]

---

**3.** We do not reach Baldassari's contentions that the Act impermissibly delegates authority to apply for wiretaps to Deputy Attorney Generals and Assistant District Attorneys and that the Act is improperly applicable to crimes not listed in Title III because the wiretaps in the instant case were applied for by the Attorney General and gambling is a

Special Agent Russell Thomas,[4] the affiant on the applications for wiretaps, possessed expertise in investigating illegal gambling activities and the use of electronic investigatory equipment. He stated facts which the issuing authority found sufficient to constitute probable cause for granting wiretap orders. Thomas' facts were corroborated by information obtained by FBI agents from confidential informants. It is unnecessary to recite those facts in this opinion. They have been recited in the thorough and careful opinion of the suppression court. Those facts demonstrated clearly that probable cause existed for issuing an order to intercept telephone conversations.[5]

Thomas also testified that normal investigative techniques either had been attempted and had failed to disclose the scope and all participants in the gambling operation or that normal techniques could not reasonably be expected to be successful. We reject appellants' argument that the summoning of a grand jury is an ordinary investigative tool which should first have been attempted by the Commonwealth. We also reject the argument that a wiretap was premature until grants of immunity to known participants had failed to disclose the remaining participants. The use of a grand jury is not a *normal* investigative tool, *Commonwealth v. Doty, supra;* and Thomas testified that informants would refuse to testify at trial

crime specifically listed in Title III. See: *Commonwealth v. Doty, supra.*

4. Thomas is a special agent with the Office of the Attorney General, Bureau of Criminal Investigations.

5. Our conclusion is based upon a review of the transcript of the suppression hearing and the trial court's opinion. Although the applications were introduced into evidence at the suppression hearing, they were not included in the record presented to this court. Appellants have not challenged the sufficiency of the affidavit to show probable cause. Rather, they have attacked the veracity of the affiant and the fact that Thomas relied upon information provided by FBI agents. It is proper for an affiant to rely upon information provided by other law enforcement officers. See: *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979); *Commonwealth v. DeGeorge,* 319 Pa.Super. 244, 466 A.2d 140 (1983), *rev'd on other grounds,* 506 Pa. 445, 485 A.2d 1089 (1984).

proceedings even if they were granted immunity. Thomas also represented that he feared a breach of security would result if he actively sought participants who would be willing to testify against others engaged in the gambling ring. The willingness of a few participants to testify at grand jury proceedings after appellants had been arrested is not evidence that the same participants would have cooperated prior to the time that arrests were made. Subsequent cooperation was induced by incriminating information obtained by the Commonwealth during the investigation and disclosed after arrests had been made.

■ At the suppression hearing, the Commonwealth introduced into evidence the minimization instructions to monitors, the monitors' logs, a publication available to the monitors at the plant concerning gambling jargon, and progress reports. The monitors' supervisor, William O'Connell, testified that the monitors had been properly trained and instructed in minimization procedures. All relevant calls were intercepted in their entirety, and calls initially determined to be non-pertinent were only spot monitored. The issuing authority visited the site of the intercept and observed the monitors' procedures. Moreover, taps were terminated prior to the date provided in the order. Finally, physical surveillance of the targets was conducted so that no monitoring of calls was conducted if the target was not at the premises. Appellants do not point to any specific calls or a pattern of calls where improper or inadequate minimization was performed. With very few exceptions, all intercepted and fully monitored communications were pertinent to the investigation. We conclude, therefore, that the Commonwealth adequately proved compliance with minimization requirements, both extrinsic and intrinsic. See: *Commonwealth v. Doty, supra.*

■ The first of four wiretaps was placed on the telephones serving the premises of Frank Pricci. Subsequent orders were obtained authorizing taps on telephones being used by Baldassari and Leta. Information constituting probable cause to tap the subsequent telephones was ob-

tained in part from the initial interceptions of Pricci's telephone conversations. Leta contends that the evidence obtained against him on the subsequent taps should be suppressed because he was not named as a target in the first order. The Commonwealth, however, did not have probable cause to believe that conversations with Leta would be intercepted by the taps on Pricci's telephones; therefore, Leta was not required to be named as a target. 18 Pa.C.S. § 5709(3)(i). The Commonwealth's information at the time the Pricci taps were authorized was that Pricci's contact was with Baldassari, and that Baldassari, in turn, worked with Leta and not with Pricci. Information subsequently obtained disclosed that Pricci had become discontented with the Baldassari connection and thereafter initiated direct contact with Leta. The initial order was not defective because it failed to name Leta as a target.

■ Leta contends also that the three subsequent wiretaps were impermissible extensions of the original order. We disagree. The suppression court found that there had been four distinct orders involving different facilities and targets, each based on new probable cause. The record supports this finding. The first tap was on Pricci's telephone. Information subsequently obtained indicated that Baldassari was operating at a higher level. Taps on Baldassari's phones, therefore, were authorized. When Baldassari changed telephone numbers, a third authorization was obtained. Finally, information obtained from the first taps revealed that Leta was operating at an even higher level. Therefore, an order was also obtained to tap his telephones. Each application was made and each order was issued in compliance with the mandate of 18 Pa.C.S. § 5710(a)(6) that new information, different and in addition to previous information, be presented to authorize a new order for the same target or facility.

■ Leta contends finally that the suppression court improperly curtailed his cross-examination of Commonwealth witnesses during the suppression hearing. The hearing court allowed Commonwealth witnesses to refuse to answer some of defense counsel's questions on cross-ex-

amination because of the danger that answers would disclose identities of confidential informants. The court, prior to each ruling, questioned the witness *in camera* without defense counsel being present and determined that the answer, in fact, was likely to disclose identities of confidential informants. Leta does not contend that he was entitled to obtain disclosure of informants identities, but he argues that his right of confrontation was unduly restricted. We disagree. This Court, in *Commonwealth v. Miller*, 334 Pa.Super. 374, 483 A.2d 498 (1984) announced the rule that a court may conduct an *in camera* hearing as a compromise of the conflicting interests of the Commonwealth and the accused under similar circumstances. *Id.*, 334 Pa.Superior Ct. at 382–388, 483 A.2d at 503–504. The procedure used in the instant case conformed to guidelines announced in *Commonwealth v. Miller*.

The remaining contentions made by appellants do not involve the Wiretap Act. Leta and Pricci contend that the searches of their premises and persons were unlawful for various reasons. Leta also contends that his property was improperly seized. Specifically, he contends that currency in the sum of $9,709.00, was unlawfully seized and should be returned to him. These contentions were properly disposed of by the trial court, and we need not discuss them further in this opinion. See: Trial court opinion at pp. 97–115 and 127–128.

Appellants' final contentions pertain to the sentences imposed. Leta was sentenced to two consecutive terms of imprisonment for 1½ to 3 years because of his conviction on two counts of bookmaking. He was also given a concurrent term of imprisonment of 1 to 2 years for conspiracy. In addition, he was fined $20,000.00. Baldassari was sentenced to two concurrent terms of imprisonment, one of 1½ to 3 years for bookmaking, one of 1 to 2 years for conspiracy. He was fined $10,000.00.

The matter of sentencing is within the sound discretion of the sentencing court. *Commonwealth v. Holler*, 326 Pa.Super. 304, 306, 473 A.2d 1103, 1105 (1984). A sentence will not be disturbed on appeal unless there has

562

been a manifest abuse of that discretion. *Commonwealth v. Black*, 321 Pa.Super. 44, 45, 467 A.2d 884, 885 (1983). Leta argues that his sentence was excessive because gambling, a non-violent crime, is not a crime against society. The sentencing court, however, observed that Leta had been the top level operator of a very extensive gambling network. Leta had also been convicted of gambling charges on prior occasions. When the sentence is examined in the light of these facts, we cannot conclude that the sentence was manifestly excessive.

 Similarly, we disagree with the contention that there was no finding of Leta's ability to pay the fines imposed. The Commonwealth presented evidence concerning the large scope of the gambling activity participated in by Leta. More importantly, the police had seized approximately $12,000.00 from Leta's person. It seems clear that Leta had the capacity to pay the fines imposed.

 During Baldassari's sentencing hearing, the court said:

This sentence is given after consideration of Purdons Statute, 42 Purdons Statute 9721 and 9722, which deal with the question of probation, and 9725 which deals with Total Confinement. In looking through the various elements considering probation, we do believe, as your Attorney argued, that a substantial number are, in fact, applicable, however we look particularly at Section 3 of 42 Pa.C.S.A, [sic] 9725, dealing with how the public expects a crime of this type to be handled by the Court. This case is the first wiretap case, wiretap gambling case in Pennsylvania. There were literally hundreds of thousands of dollars spent by the prosecution and the development of this case by the Commonwealth. This is the first effort, successful effort, organized effort to get to the top Bookmakers in the State of Pennsylvania. The public, when that type of an endeavor goes forward, expects the Court will do more than hit a person on the back of the wrist and say "You are a bad boy.", [sic] and send them home. It expects there will, in fact, be imprisonment. It expects that money of the taxpayers is not wasted. Now,

as I pointed out to you previously when people are engaged in gambling as a full-time occupation for profit, money is, in my view, is not the obstacle to prevent them from continuing in that business. The only person, the only thing that those persons actually believe is that some Judge some day is going to put them behind bars, and that is what has occurred in this case. That is the price you have to pay.

(Sentencing transcript at pp. 22–23). Baldassari argues that the expenditure of funds in investigating criminal conduct and in prosecuting therefore is an improper reason for imposing a sentence of imprisonment. After reviewing the sentencing hearing in its entirety, we conclude that the statements complained of by Baldassari were made to illustrate that society in general, and the attorney general and the sentencing court in particular, considered the particular crime to be a serious one which, in view of the magnitude of the operation, required the imposition of a term of imprisonment in order to deter others. Anything less, especially considering that Baldassari had been convicted of similar crimes on two prior occasions, would have depreciated the seriousness of his criminal activity.

The judgments of sentence are affirmed.