502 A.2d 679

**COMMONWEALTH of Pennsylvania**

v.

**Gilbert HARVEY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 9, 1985.

Filed Dec. 20, 1985.

546

Ronald L. Chicka, Mount Pleasant, for appellant.

John Driscoll, District Attorney, Greensburg, for Com., appellee.

Robert A. Graci, Chief Deputy Attorney General, Harrisburg, for the Attorney General, intervenor.

Before WIEAND, JOHNSON and MONTGOMERY, JJ.

WIEAND, Judge:

Gilbert Harvey was found guilty by a jury of possession of a controlled substance and possession with intent to deliver. Included among items of evidence relied upon by the Commonwealth at trial were tape recordings of conversations between Gilbert Harvey and Jeffrey Woods, an informant. These recordings had been made with Woods' consent pursuant to statutory authorization contained in 18 Pa.C.S. § 5704(2)(ii). On direct appeal from the judgment of sentence, Harvey contends that recorded evidence of these conversations should have been suppressed because the statute authorizing interception of personal and telephone conversations is unconstitutional. We disagree.

The Commonwealth's evidence showed that on September 1, 1982, Woods had telephoned appellant and had asked him to obtain cocaine for him. Appellant agreed to try. Some time later that evening, after a number of conversations both by telephone and in person, all of which were intercepted and recorded, Woods went to appellant's home. Woods was then wearing devices which transmitted his conversations to receivers monitored by the police, who recorded the communications received. After Woods had been at appellant's home for a brief period of time, Donald Payne arrived. Woods gave $300 to appellant who went out on the porch with Payne. When appellant re-entered the house, he gave Woods three packages of cocaine. Appellant also retained some of the cocaine for himself. Woods then left and turned the cocaine over to the police.

The Wiretapping and Electronic Surveillance Control Act, at 18 Pa.C.S. § 5704, provides as follows:

It shall not be unlawful under this chapter for:

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

. . . .

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

Appellant argues that legislative authorization to police to intercept communications with the prior consent of one of the parties: (1) violates the First Amendment of the United States Constitution and Article 1, Section 7 of the Pennsylvania Constitution because it has a chilling effect on free speech; (2) violates the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution because it permits warrantless searches; (3) is invalid because it vests unlimited discretion in the government; and (4) deprives citizens of due process of law because it allows law enforcement officials to record incriminating evidence against a person without giving that person the correlative right to record exculpatory conversations. Close examination of these contentions reveals that they are lacking in merit.

"The law is well settled that statutes duly enacted by the legislature are presumed to be constitutional.... A statute will not be held unconstitutional except upon a showing that the statute is 'clearly, palpably and plainly' in conflict with constitutional provisions." *Commonwealth v. Leta*, 346 Pa.Super. 552, ——, 500 A.2d 85, 87 (1985), quoting *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981). See: *Commonwealth v. Doty*, 345 Pa.Super. 374, 387–88, 498 A.2d 870, 876 (1985); *Estate of Cox*, 327 Pa.Super. 479, 485, 476 A.2d 367, 370 (1984), and cases cited therein.

■ The First Amendment of the federal Constitution provides that "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. This guarantee is applicable to the states through the Fourteenth Amendment. See, e.g.: *Brightbill v. Rigo*, 274 Pa.Super. 315, 322 n. 2, 418 A.2d 424, 427 n. 2 (1980). Where a state statute unduly restricts a citizen's First Amendment rights, it will be held unconstitutional. See: *American Future Systems, Inc. v. Pennsylvania State University*, 688 F.2d 907 (3d Cir.), *cert. dismissed*, 459 U.S. 1093, 103 S.Ct. 583, 74 L.Ed.2d 941 (1982); *American Civil Liberties Union v. City of Pittsburgh*, 586 F.Supp. 417 (W.D.Pa.1984); *Pennsylvania Accessories Trade Association v. Thornburgh*, 565 F.Supp. 1568 (M.D.Pa.1983); *Commonwealth ex rel. Specter v. Moak*, 452 Pa. 482, 307 A.2d 884 (1973).

Appellant argues that Section 5704(2)(ii) has a chilling effect on free speech because it discourages citizens from conversing freely. However, Section 5704(2)(ii) does not either declare any type of speech or conduct illegal, or establish any barrier to the exercise of free speech. It does no more than provide a means for law enforcement officials to preserve already admissible evidence of criminal activity for use in later prosecutions. Appellant could not possibly argue that Woods should not be permitted to testify to the substance of conversations which the two men shared about the sale of a controlled substance. Their conversations

were neither privileged nor protected from being overheard. Thus, in *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 691, 93 L.Ed. 834, 843–844 (1949), the Supreme Court said: "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced or carried out by means of language, either spoken, written or printed." Section 5704(2)(ii) does not impair the freedom of citizens to assemble or to speak freely. It is not rendered invalid because it permits law enforcement officials to preserve evidence of criminal conduct disclosed in conversation. Appellant's argument that the statute chills free speech, therefore, is untenable.

Moreover, even if the statute were to have some "chilling effect" on free speech, that fact alone would not render it unconstitutional. In *American Booksellers Association v. Rendell*, 332 Pa.Super. 537, 481 A.2d 919 (1984), this Court upheld the constitutionality of a statute which prohibited the display of explicit sexual materials in commercial establishments where minors might be expected to be exposed to them. The plaintiffs had argued that the statute had a chilling effect on their First Amendment rights because booksellers were being forced to choose between censoring publications prior to public display or risking prosecution. We said:

> the mere fact that booksellers might engage in self-censorship does not require invalidation of the statute. The existence of a "chilling effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action ...
>
> ... Just as the incidental "chilling effect" of such statutes does not automatically render them unconstitutional, so the chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the State from carrying out the important and necessary task of

enforcing these laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution.

*Id.*, 332 Pa.Superior Ct. at 579, 481 A.2d at 940, quoting *Younger v. Harris*, 401 U.S. 37, 51–52, 91 S.Ct. 746, 754, 27 L.Ed.2d 669, 679–680 (1971).

Any tendency of 18 Pa.C.S. § 5704(2)(ii) to bring about self-censorship on the part of criminals engaged in conversations with other persons does not render the statute unconstitutional. The statute permits interception of communications "involving suspected criminal activities." Any chilling effect on the right of a person to speak freely about his criminal activities is a necessary incident to the important and necessary task of enforcing laws against socially harmful conduct.

Appellant's contention that the statute imposes an impermissible restraint on free speech in violation of Article 1, Section 7 of the Pennsylvania Constitution is also without merit. "Subjection to criminal liability for past conduct ... or following a hearing at which the defendant has the right to trial by jury, and the Commonwealth must prove the elements of the violation beyond a reasonable doubt ... does not constitute a prior restraint." *American Booksellers Association v. Rendell, supra,* 332 Pa.Super. at 578 n. 24, 481 A.2d at 940 n. 24.

■ Appellant's next contention is that Section 5704(2)(ii) violates the Fourth Amendment of the United States Constitution. He argues that actions of law enforcement officials in intercepting and recording his conversations without a warrant violated his Fourth Amendment right to be free from unreasonable searches and seizures. Again we disagree.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. amend. IV.

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection ... [b]ut what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) (citations omitted).

> [T]he Supreme Court has consistently held that whether an individual is entitled to the protection of the fourth amendment "depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), *reh. denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979).... The controlling consideration, therefore, is whether the individual contesting the search and seizure entertains a legitimate expectation of privacy in the premises or area searched.

*Commonwealth v. Sell*, 288 Pa.Super. 371, 377–378, 432 A.2d 206, 210 (1981) (footnote and citations omitted), *rev'd on automatic standing issue*, 504 Pa. 46, 470 A.2d 457 (1983). Not only must the individual exhibit an actual expectation of privacy, but his expectation must also be one that society will recognize as being reasonable. *Id.*, 288 Pa.Superior Ct. at 378, 432 A.2d at 210, quoting *Smith v. Maryland*, 442 u.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226–227 (1979).

Numerous federal decisions have held that the Fourth Amendment "does not protect a party to conversation who reposes trust or confidence in an undisclosed government agent or informant." *United States v. Mitlo*, 714 F.2d 294, 296 (3d Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983). See: *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 1124–1125, 28 L.Ed.2d 453, 457 (1971) (plurality opinion); *Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374, 382 (1966);

*Lopez v. United States,* 373 U.S. 427, 437–438, 83 S.Ct. 1381, 1387, 10 L.Ed.2d 462, 469–470 (1963); *On Lee v. United States,* 343 U.S. 747, 753–754, 72 S.Ct. 967, 972, 96 L.Ed. 1270, 1275–1276 (1952); *United States v. Kelly,* 708 F.2d 121, 124 (3d Cir.), *cert. denied,* 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983); *United States v. Santillo,* 507 F.2d 629, 631–632 (3d Cir.), *cert. denied sub nom, Buchert v. United States,* 421 U.S. 968, 95 S.Ct. 1960, 44 L.Ed.2d 457 (1975). "Neither [the Supreme] Court nor any member of it has ever expresed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States, supra,* 385 U.S. at 302, 87 S.Ct. at 413, 17 L.Ed.2d at 382. Thus,

> it does not violate an individual's constitutional or statutory privacy interests to introduce at a criminal trial tape recordings of his private conversations if the other party to those conversations voluntarily consented to their recording.... "The principle underlying [that rule] is that when one reveals information to an individual, one takes the risk that one's confidence in that individual is misplaced." ... [N]o justifiable expectation of privacy is violated if the government subsequently uses that conversation at trial.

*United States v. Kelly, supra* at 124, quoting *Flaherty v. Arkansas,* 415 U.S. 995, 999, 94 S.Ct. 1599, 1601, 39 L.Ed.2d 893, 894 (1974) (Douglas, J., dissenting from the denial of certiorari) (numerous citations omitted). See, e.g.: *United States v. White, supra; United States v. Mitlo, supra; United States v. Santillo, supra* at 634–635 and cases cited in note 15.

Given these authorities, appellant's contention that Section 5704(2)(ii) violates his rights under the Fourth Amendment must fail. That the recordings here in question were made in appellant's own home does not mandate a different result. Indeed, in *United States v. White, supra,* the electronic surveillance occurred in the defendant's home and automobile. Even so, the court held, the defendant had no

right of privacy with respect to statements made to another person, and interception thereof did not violate his Fourth Amendment rights.

Appellant also argues that Section 5704(2)(ii) violates Article 1, Section 8 of the Pennsylvania Constitution. That section provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. 1, § 8. Appellant urges us to interpret Article 1, Section 8 as providing greater protection for the right to privacy than does the Fourth Amendment of the United States Constitution. A similar argument was made and rejected by this Court in *Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985). See also: *United States v. Geller*, 560 F.Supp. 1309 (E.D.Pa.1983), *aff'd sub nom, United States v. DeMaise*, 745 F.2d 49 (3d Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985).

"[I]t cannot be doubted that this state has the constitutional power to guard individual rights, including the right to be free from unreasonable searches and seizures, more zealously than the federal government does under the United States Constitution." *Commonwealth v. Beauford*, 327 Pa.Super. 253, 263, 475 A.2d 783, 788 (1984). See: *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983); *Kroger Co. v. O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978); *Commonwealth v. Harris*, 429 Pa. 215, 239 A.2d 290 (1968). Indeed, in *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980), and *Commonwealth v. Beauford, su-*

*pra,* Pennsylvania courts interpreted Article 1, Section 8 to provide greater protection from unreasonable searches and seizures than the Fourth Amendment. Nevertheless, it is difficult under any interpretation of Article 1, Section 8, to find a justifiable expectation of privacy with respect to information disclosed during conversation with a third person. Disclosures made during conversation are entirely voluntary. If a citizen voluntarily discloses criminal involvement during conversation with a third person, the Pennsylvania constitutional guarantee against unreasonable searches and seizures does not prevent future disclosure thereof to law enforcement officials. Similarly, the constitutional guarantee does not extend to or prevent a recording of the conversation in order to preserve the same for use in law enforcement activity. Nothing in contemporary constitutional thinking suggests otherwise.

■ Similarly, there is no merit in appellant's argument that the statute creates a constitutionally impermissible balance in favor of law enforcement officials by allowing them to record incriminating conversations of citizens while denying citizens the correlative right to record exculpatory statements. There is no basis in law for the bald assertion that for every legislatively endorsed or created investigative technique for use by law enforcement officials there must be a correlative and offsetting right by which criminals can conceal their illegal activities.

■ We also reject appellant's argument that because Section 5704(2)(ii) lacks restrictive guidelines, it is invalid because it sanctions indiscriminate electronic surveillance. Police discretion is not unlimited. It is restricted by the requirement that one of the parties must give prior consent to such an interception. Interceptions are also limited to communications involving suspected criminal activities. When acting within these limitations, law enforcement authorities violate no constitutional rights of the parties by intercepting conversations where one of the conversants has consented to have the conversation recorded.

■ Appellant argues that the evidence obtained by electronic surveillance should have been suppressed because the memorandum of approval executed by the Deputy Attorney General did not specifically list appellant as one whose conversations were to be intercepted. The record of the suppression hearing discloses that on August 13, 1982, a memorandum of approval was executed which authorized the interception of communications between Woods and a number of other persons who had been identified by name. One of the persons specifically identified by name was appellant. The memorandum expired according to its terms on August 25, 1982. Thereafter, a second memorandum of approval was executed. This memorandum was labeled an "extension" and authorized interceptions from August 26, 1982 to and including September 4, 1982. This extension authorized interception of communications between Woods and "others who may be present at the time narcotic transactions take place or are discussed." Although appellant's name was not among those specifically listed, it was enough that he was in the general category of other persons present when narcotics transactions took place. Moreover and in any event, as this Court observed in *Commonwealth v. Checca*, 341 Pa.Super. 480, 492, 491 A.2d 1358, 1364 (1985), neither the Wiretap Act nor relevant case law subjects a "Memorandum of Consent," which is based on consent of a party to the conversation, to the exacting standards of authorization required for nonconsensual surveillance under the Wiretap Act.

■ Appellant's final contention is that the trial court erred when it refused to redact a certain portion of the tape recorded conversation which made reference to a prior sale of cocaine. The trial court determined that this portion of the conversation was relevant to show an intent to participate in the drug transaction with Woods.

"In Pennsylvania, the law is clear that if a testimonial reference[, absent specific circumstances,] ... indicates to the jury the accused has been involved in prior criminal activity, reversible error has been committed." *Com-*

monwealth v. *Turner,* 454 Pa. 439, 442, 311 A.2d 899, 900 (1973).... "[P]assing references" to prior criminal activity do not necessarily warrant reversal.... Rather, the record must illustrate that prejudice results from the reference. Prejudice results where the testimony conveys to the jury, either expressly *or by reasonable implication,* the fact of a prior criminal offense.

*Commonwealth v. Nichols,* 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979) (emphasis in original). See: *Commonwealth v. Williams,* 476 Pa. 557, 569, 383 A.2d 503, 509 (1978); *Commonwealth v. Green,* 315 Pa.Super. 564, 576–577, 462 A.2d 736, 742 (1983); *Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 450–451, 444 A.2d 115, 118 (1982); *Commonwealth v. Jackson,* 263 Pa.Super. 183, 184–185, 397 A.2d 807, 808 (1979). Thus, the threshold inquiry is whether the evidence in question reasonably implied that the defendant had engaged in prior criminal activity, for only if this inquiry is answered affirmatively, is it necessary that we determine whether the evidence falls within one of the exceptions to the general rule of inadmissiblity.

In the instant case, the portion of the conversation about which appellant complains was as follows:

Defendant Harvey: Nobody did, nobody, oh no I charged a hundred and a half.

Informant Woods: For a gram?

Defendant Harvey: Yea, Mine was pure rock, ah, no shape, I broke it off the rock, off the rock, No cut what so ever. Yea, I told you, four ounces didn't last for a day and a half.

Informant Woods: Yea.

Defendant Harvey: It was this four ounce plate of rock and you know, I was afraid of pinchin' it and ah, you know, it'd be all off the rock. You know there gotta be some cryin'. You know, but I'd break, what I'd think is about a eighth of a piece, then I'd measure and weigh it out.

Much of this conversation was unintelligible to persons not versed in the dialect of the drug culture. Nevertheless, it is

possible that a juror might have inferred from the conversation that appellant had sold controlled substances in the past. Therefore, we will determine whether the evidence was admissible as an exception to the general rule.

> Evidence of other crimes is admissible ... when the evidence tends to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan, or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or, (5) the identity of the person charged with the crime on trial.

*Commonwealth v. Brown*, 280 Pa.Super. 303, 307, 421 A.2d 734, 736 (1980). See: *Commonwealth v. Peterson*, 453 Pa. 187, 197–198, 307 A.2d 264, 269 (1973); *Commonwealth v. Sparks*, 342 Pa.Super. 202, 206, 492 A.2d 720, 722 (1985); *Commonwealth v. Barba*, 314 Pa.Super. 210, 221, 460 A.2d 1103, 1109 (1983); *Commonwealth v. Martinez*, 301 Pa.Super. 121, 125, 447 A.2d 272, 274 (1982). "To be admissible to show intent or motive, the evidence must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Brown, supra* 280 Pa.Super. at 308, 421 A.2d at 736, citing *Commonwealth v. Schwartz*, 445 Pa. 515, 285 A.2d 154 (1971). There must be a logical connection between the prior incident and the crime for which the accused is being tried. Important factors to be considered in making this determination include the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of required intent. See: *Commonwealth v. Sparks, supra* 342 Pa.Super. at 206, 492 A.2d at 722; *Commonwealth v. Barba, supra* 314 Pa.Super. at 222, 460 A.2d at 1109.

The reference to prior sales of controlled substances was contained in a conversation in which appellant, according to the Commonwealth, was attempting to sell drugs to Woods.

It was an essential part of the transaction for which appellant was being prosecuted. See: *Commonwealth v. Murphy*, 346 Pa.Super. 438, 499 A.2d 1080 (1985). It was also relevant to show that appellant was not an innocent party serving as an unwitting "go-between" in a drug transaction. Rather, he was part of a broader and ongoing scheme to sell drugs. The evidence was particularly relevant in view of appellant's defense that his only involvement was as an innocent person attempting to find a seller of drugs for a friend. The trial court did not err in refusing to redact this portion of the conversation in which an illegal drug sale was negotiated.

The judgment of sentence is affirmed.