546 A.2d 6

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Matthew WHITAKER, Appellant.**

Supreme Court of Pennsylvania.

Argued May 11, 1988.

Decided July 27, 1988.

Emmanuel H. Dimitriou, Reading, for appellant.

Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On May 20, 1983, in a trial by jury in the Court of Common Pleas of Lycoming County, the appellant, Matthew Whitaker, was found guilty of bookmaking and conspiracy to commit bookmaking. See 18 Pa.C.S. § 5514 (bookmaking); 18 Pa.C.S. § 903 (conspiracy). A sentence of one to four years imprisonment was imposed. An appeal was taken to the Superior Court, and, in a memorandum opinion and per curiam order, the judgment of sentence was affirmed, 350 Pa.Super. 636, 503 A.2d 459. The present appeal ensued.

At trial, various telephone communications of appellant were introduced into evidence, such communications having

been obtained through telephone wiretaps issued under provisions of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701, et seq., (hereinafter Wiretap Act). Various questions regarding the admissibility of this evidence are presented for our review. The Petition for Allowance of Appeal was granted in this case primarily to allow this Court to address certain issues of first impression involving interpretation of the Wiretap Act.[1] Upon review, however, it is apparent that most of the issues involve only questions as to whether the record adequately supports findings of fact made by the court of common pleas.

The first contention raised by appellant concerns the fact that the order authorizing the tap which intercepted his telephone conversations did not name him as one of the individuals whose communications were to be intercepted. The tap was not connected to appellant's telephones, but rather was connected to the telephones of another individual. The wiretap order named a number of other individuals, as well as "others yet unknown," as targets of the tap. This fact gains significance under 18 Pa.C.S. § 5712(a), which provides, "Each order authorizing the interception of any wire or oral communication shall state the following: ... (2) The identity of, or a particular description of, the person, if known, whose communications are to be intercepted."

■■ In the application seeking issuance of the wiretap order, appellant was not designated as one whose communi-

---

**1.** We have also examined, however, issues presented as to the sufficiency of the evidence to support the conviction, and the adequacy of the jury charge, but find no basis for reversal. Evidence supporting the conviction included numerous taped conversations in which appellant was heard using gambling "lingo" to conduct bookmaking operations, and the meaning of those conversations was deciphered for the jury by a witness who had expertise in the terminology used in bookmaking activities. Insofar as the jury charge is concerned, appellant asserts that an error was made when the court first defined elements of the offense of bookmaking. Appellant now *concedes,* however, that a revised charge was subsequently given which *correctly* stated those elements. The revised charge was given at the request of defense counsel, who then immediately indicated satisfaction with the charge. Thus, it is clear that any alleged errors in the charge were subsequently corrected, and appellant was not prejudiced.

cations would be intercepted. It is argued, therefore, that the absence of appellant's name from the list of individuals named in the application mandates exclusion of the evidence, under 18 Pa.C.S. § 5709(3)(i), which provides that an application "shall" include an affidavit specifying the "identity of the particular person, if known, committing the offense and whose communications are to be intercepted." The suppression court declined to suppress appellant's intercepted communications, however, reasoning that the foregoing statutory provision does not require that a person be named in a wiretap application unless there is probable cause to believe that such person's communications will be intercepted. On the basis that probable cause was lacking with respect to appellant, the suppression court ruled that the evidence against appellant need not be suppressed. We agree.

The foregoing statutory provision expressly limits the situations in which individuals are to be specified by name in an application, to wit, requiring identification of individuals who are "known," and who are "committing the offense," and only when it can be said that the individuals' communications "are to be intercepted." A determination as to whether, in any given case, these criteria are satisfied becomes, therefore, a pivotal issue.

In *United States v. Kahn*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), the Supreme Court of the United States addressed an analogous provision of the federal wiretapping statute, which provides, in language virtually identical to that found in our Wiretap Act, that the application for a wiretapping order must specify "the identity of the person, if known, committing the offense and whose communications are to be intercepted," 18 U.S.C. 2518(1)(b)(iv). In *Kahn*, it was held that the naming of an individual in an application for an interception order is necessary only when investigating authorities have *probable cause* to believe that the individual whose communications are to be intercepted is committing the offense for which the wiretap is sought.

A similar conclusion is compelled, with respect to the statute applicable to the present case, by the following language in the Wiretap Act:

> Upon consideration of an application, the [Superior Court] judge may enter an ex parte order, as requested or as modified, authorizing the interception of a wire or oral communication anywhere within the Commonwealth, if the judge determines on the basis of the facts submitted by the applicant that there is *probable cause* for belief that all the following conditions exist:
>
> (1) the person whose communication is to be intercepted is committing, has or had committed or is about to commit [specified offenses];
>
> (2) particular communications concerning such offense may be obtained through such interception. . . .

18 Pa.C.S. § 5710 (emphasis added). Thus, unless probable cause is present, an interception order cannot be issued. It follows, therefore, that an application for an interception order should not name as targets individuals with respect to whom probable cause is lacking.

Clearly, an applicant for a wiretap cannot be expected to name persons whose communications "*are* to be intercepted," 18 Pa.C.S. § 5709(3)(i), supra (emphasis added), when there are no probable grounds to believe such communications will be intercepted. To require that every person whose communications are in fact intercepted have been named in an interception order would require a high degree of omniscience indeed, obviously not intended as an element of wiretapping prerequisites.

The probable cause standard reflects a balance which has been struck by the legislature in accommodating the sometimes competing goals of furthering individual privacy and combatting the operations of crime. While electronic surveillance measures have proven to be highly effective in uncovering and prosecuting criminal behavior, there is recognition that such measures do impair individual privacy. For that reason, the legislature has determined that limited

interference with privacy interests is warranted only in cases where probable cause is present.

Upon the facts of the present case, the suppression court found that there was not probable cause to have named appellant in the application for an interception order. Accordingly, the fact that appellant was not specified as one of the target individuals was not viewed as mandating exclusion of his intercepted communications.

In a suppression hearing, the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights rests upon the Commonwealth. Pa.R.Crim.P. 323(h). In reviewing the findings of a suppression court as to whether the Commonwealth's burden has been met, for example regarding the issue of probable cause, our responsibility is to determine whether the findings are supported by the record. *Commonwealth v. Monarch*, 510 Pa. 138, 147, 507 A.2d 74, 78 (1986). The record in the present case provides ample basis for the findings of the suppression court.

■ Appellant claims that probable cause existed to name him in the application for an interception order, and that the failure to include his name was intentional. The record contains no evidence, however, to support such a claim of intentional omission. Appellant presented no testimony supporting the claim, and the Commonwealth's testimony was to the contrary. It should be noted, too, that there has not been any assertion by appellant, or by the Commonwealth, that omission of the name in question occurred through inadvertence. Rather, the Commonwealth asserts that there simply was not probable cause for belief that the proposed wiretap would intercept communications from appellant, and, thus, that there was no need to name appellant in the application.

The Commonwealth agrees that the existence and activities of appellant were to a limited extent known to authorities, as evidenced by the fact that the affidavit submitted with the interception application mentioned appellant as a

person who had, approximately two months previously, been involved in gambling dealings with one of the individuals whose communications were to be intercepted, Anthony Leta. Knowledge of these dealings arose approximately one month before the instant wiretap application was made. Specifically, on February 9, 1981, investigating authorities met with Pennsylvania State Police and learned that appellant had been arrested, and that appellant's premises in Pottsville, Pennsylvania had been searched pursuant to a federal search warrant, on February 4, 1981. The arrest and search were conducted by the F.B.I. and the Pennsylvania State Police, on the basis of wiretap information received from Wilmington, Delaware. Evidence was obtained in the search that appellant had made "layoffs" of gambling wagers to Leta, utilizing specifically identified phone lines listed on a sheet of rice paper.

The phone lines listed on the rice paper, and on other records seized in the search, did *not* include the lines for which the present tap was sought. There was no evidence of knowledge by investigating authorities that appellant had ever communicated on the phone lines that were to be tapped. Nor was there any indication that appellant would *continue* to engage in gambling activities with Leta and begin utilizing the intercepted lines.

The record of the suppression hearing is voluminous, due to the extensive investigative reports which have been made a part of the record, as well as the fact that appellant was tried jointly with numerous other defendants involved in the same bookmaking scheme. The suppression court noted that testimony concerning appellant was very sparse, due to the Commonwealth's "lack of knowledge" regarding appellant, and concluded that investigating authorities had only the very limited information heretofore described regarding appellant prior to March 6, 1981, the date when application was made for the instant wiretap on phone lines subscribed to by a Robert Palermo and used by, among others, Leta. We have not found, and appellant has not brought to our attention, any evidence in that record that would indicate

investigating authorities had greater knowledge of appellant, or of a possibility that appellant's calls would be intercepted on the tapped phone lines, than was found by the suppression court. It cannot be said, therefore, that the findings of the suppression court are unsupported by the record.

The next contention raised by appellant is that the wiretap order which resulted in interception of his communications constituted an improper extension of earlier wiretap orders. Prior to the wiretap order involved in the present case, three other wiretap orders had been issued in the course of investigating this wide-ranging bookmaking conspiracy. The first of these orders was issued on December 31, 1980, authorizing interception of communications on phone lines serving the residence of Frank Pricci in Scranton, Pennsylvania. The second was issued on January 23, 1981, permitting interception at another location, on phone lines used by Joseph Baldassari. Then, due to a change in the location of some of the phones used in Baldassari's activities, a third order was issued on January 24, 1981, permitting interception on certain additional phone lines. Finally, on March 6, 1981, the interception order which ultimately resulted in interception of appellant's conversations was issued for the phone lines of Robert Palermo in Williamsport, Pennsylvania.

Appellant argues that the order authorizing the tap on Palermo's phone lines, used by Leta and other suspected gambling conspirators, should not be regarded as a new wiretap order, and that it should instead be construed as a third extension granted with respect to the first wiretap order. On the basis that extensions of wiretap orders are limited by statute to a single extension, having a maximum duration of twenty days, 18 Pa.C.S. § 5712(b), beyond the twenty day limit for the initially authorized interception, *Id.*, appellant reasons that the instant wiretapping occurred beyond the allowable period as measured from the date of entry of the first order.

■ The rationale advanced for construing the series of wiretaps in this case as just one wiretap is that such an approach would result in greater protection for the privacy of communications, by restricting the allowable period of interception, and would coincide with a notion advanced by appellant that the legislature would not have wanted more than one wiretap order to be issued in the course of investigating any single conspiracy. Such a rationale is, however, patently lacking in statutory basis. The statute expressly permits the issuance of more than one wiretapping order in the course of any given investigation, even where the person or facility to be intercepted has been the subject of a previous order. As stated in 18 Pa.C.S. § 5710(a)(6), a new wiretap order may be granted based upon a showing of probable cause for belief that, inter alia, the following condition is satisfied:

"in the case of an application, other than a renewal or extension, for an order to intercept a communication of a person or on a facility which was the subject of a previous order authorizing interception, the application is based upon new evidence or information different from and in addition to the evidence or information offered to support the prior order, regardless of whether such evidence was derived from prior interceptions or from other sources."

■ In the present case, the suppression court ruled that there had been a series of distinct interception orders, rather than that there had been one order which was extended three times. The record provides ample support for that finding. The wiretap orders were issued with respect to different phone lines, in different locations, used by individuals operating at different levels of the conspiracy. The suppression court found that each of the successive wiretap applications was granted on the basis of a new showing of probable cause, attributable to information gathered in the course of an ongoing investigation. Indeed, the record shows that investigating authorities gradually learned how certain individuals fit onto the rungs of the

ladder of the subject criminal conspiracy, and, as this information was obtained, applied for successive taps. Use of information obtained in the course of one tap to apply for another tap is expressly authorized by statute. 18 Pa.C.S. § 5710(a)(6), supra.

Accordingly, we find no lack of support for the suppression court's finding that multiple distinct wiretap orders were involved in this case. It should be noted that this same finding was reviewed and affirmed in *Commonwealth v. Leta*, 346 Pa.Super. 552, 560, 500 A.2d 85, 89–90 (1985), appeal granted, 514 Pa. 646, 524 A.2d 493 (1987) (grant of appeal limited to review of propriety of *ex parte in camera* proceedings). In *Leta*, one of appellant's co-defendants argued that the same four taps as are under review in the present appeal constituted, in essence, one tap that was extended three times. The argument was rejected by the Superior Court, on grounds the suppression court's findings were fully supported by the record. There is no basis for appellant's arguments that the four taps should be deemed as one tap, or that the use of successive taps in the course of investigating a single conspiracy is not authorized by the legislature.

Appellant's final contention involves an allegation of deficiency in the affidavit submitted in connection with the application for the wiretap that intercepted his communications. In 18 Pa.C.S. § 5709(3)(vii), there is set forth a requirement that the affidavit contain "A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ." Further, it is provided in 18 Pa.C.S. § 5710(a) that a wiretap order cannot be issued unless the court determines, based on facts submitted by the applicant, that probable cause exists to believe normal investigative procedures are inadequate.

Appellant asserts that the statement of facts contained in the affidavit was inadequate to satisfy the probable cause standard. We do not agree. The suppression

court found probable cause for belief that normal investigative methods provided insufficient means to discover necessary aspects of the instant bookmaking conspiracy, and the record amply supports that finding. The affidavit confirmed the inadequacy of physical surveillance in this case, and the inadequacy of telephone toll records as an investigative tool. The affidavit also contained discussion of the futility of using undercover agents, a technique which had been tried in this case. In addition, the affidavit contained statements as to furtive actions taken by Leta and others to avoid normal methods of surveillance, and it provided a discussion of the need for interception of communications as a means of discovering the full scope of the conspiracy. The affiant was a highly experienced agent, knowledgeable in the difficulties involved in investigating bookmaking operations. We perceive no lack of support in the record for the suppression court's findings.

Judgment of sentence affirmed.