J-A32033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEROME SHERWIN GRIER, | |
| Appellant | No. 1429 EDA 2013 |

Appeal from the Judgment of Sentence April 24, 2013
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001348-2011

BEFORE:  PANELLA, OLSON AND FITZGERALD,* JJ.

CONCURRING AND DISSENTING MEMORANDUM BY OLSON, J.:
**FILED OCTOBER 15, 2015**

I agree with the learned majority that the trial court correctly denied Appellant's motion to suppress.  My reasoning, however, differs from that of the learned majority.  I also agree that the trial court did not abuse its discretion in admitting evidence relating to cocaine not directly associated with Appellant.  I do so not only for the reasons expressed in the trial court's opinion (which the learned majority adopts as to this issue) but for an additional reason as well.  I fully join the majority's disposition on Appellant's claim under **Alleyne v. United States**, 133 S.Ct. 2151 (2013). I dissent, however, from the majority's holding that Appellant is eligible to participate in the Recidivism Risk Reduction Initiative ("RRRI").  In my view, the trial court should apply the modified categorical approach upon remand

* Former Justice specially assigned to the Superior Court

when determining if Appellant is RRRI eligible. I therefore respectfully concur in part and dissent in part.

As the learned majority correctly states, the order authorizing interception of co-defendant Philip DiMatteo's ("DiMatteo's") telephone calls was required to list Appellant if there were probable cause to believe that Appellant's communications would be intercepted. **See Majority Memorandum** at 8-9, *citing* **Commonwealth v. Whitaker**, 546 A.2d 6, 8 (Pa. 1988). The learned majority concludes that "the Commonwealth lacked knowledge that Appellant—and not KL Bugg—was communicating with DiMatteo." **Majority Memorandum** at 10. I disagree. After careful review of the documents submitted to the Honorable Paula Francisco Ott, I conclude that the Commonwealth was fully aware that Appellant, and not KL Bugg, was communicating with DiMatteo.

As the learned majority notes, the probable cause affidavit submitted with the Chester County District Attorney's ("DA's") original application to Judge Ott listed Appellant's telephone number along with the subscriber information. **Majority Memorandum** at 3-4, *quoting* Exhibit A to Application for an Order Authorizing the Interception of Electronic and Wire Communications, 3/19/10, at 34-36. Although the subscriber information listed KL Bugg as the subscriber, the three affiants stated that their search returned no results for a KL Bugg. The affiants noted, however, that Appellant was known to use the address listed for KL Bugg. The affiants

- 2 -

therefore listed Appellant's prior drug related offenses in a (successful) attempt to establish probable cause that DiMatteo used his telephone to engage in drug transactions. On March 19, 2010, Judge Ott signed the DA's proposed order authorizing the interception of electronic communications. That order never referenced Appellant nor did it incorporate the probable cause affidavit. *See generally* Order Authorizing the Interception of Electronic and Wire Communications, 3/19/10.

More importantly, on April 20, 2010, the DA submitted an application to Judge Ott seeking an order extending the wiretap authorization. In that application, the DA stated "[t]here is probable cause to believe that . . . [Appellant has] committed and [is] committing offenses involving the distribution and possession of controlled substances[.]" Application for an Order Extending the Authorization for the Interception of Electronic and Wire Communications, 4/20/10, at 16-17. The DA then averred that Appellant and DiMatteo discussed illegal drug transactions during intercepted communications. *Id.* at 17-18. The DA contemporaneously submitted a proposed order to Judge Ott with his application. After carefully reviewing the application, probable cause affidavit, and status updates, Judge Ott signed the DA's proposed order on April 20, 2010. That order was unchanged from the version submitted by DA.

The April 20, 2010 order did not mention Appellant. Furthermore, the order did not incorporate by reference the DA's application. Therefore, it is

evident that the order only applied to DiMatteo despite the fact that the DA argued in his application that there was probable cause that Appellant's communications with DiMatteo would be intercepted. Judge Ott did not reject this averment by the DA. Instead, she signed the order requested by the DA. Based upon the evidence presented in the March 19, 2010 probable cause affidavit, the April 20, 2010 probable cause affidavit, and the intervening progress reports, I believe there was probable cause that Appellant's drug-related communications with DiMatteo would be intercepted. Although there was no record of KL Bugg, Appellant used the address associated with the KL Bugg telephone line. Police then intercepted numerous conversations between Appellant and DiMatteo in which they discussed drug transactions. This easily satisfied the probable cause standard.

Having determined that Appellant should have been named in the wiretap orders, I turn to whether suppression is the appropriate remedy. It is well-settled that intercepted wire communications can only be suppressed on six non-constitutional grounds. ***Commonwealth v. Steward***, 918 A.2d 758, 760 (Pa. Super. 2007), *appeal denied*, 945 A.2d 170 (Pa. 2008). Specifically, the evidence can be suppressed if:

> (1) Unless intercepted pursuant to an exception set forth in section 5704 (relating to exceptions to prohibition of interception and disclosure of communications), the interception was made without prior procurement of an order of authorization under section 5712 (relating to issuance of order and effect) or an order of approval under section 5713(a) (relating to emergency

- 4 -

situations) or 5713.1(b) (relating to emergency hostage and barricade situations).

(2) The order of authorization issued under section 5712 or the order of approval issued under section 5713(a) or 5713.1(b) was not supported by probable cause with respect to the matters set forth in section 5710(a)(1) and (2) (relating to grounds for entry of order).

(3) The order of authorization issued under section 5712 is materially insufficient on its face.

(4) The interception materially deviated from the requirements of the order of authorization.

(5) With respect to interceptions pursuant to section 5704(2), the consent to the interception was coerced by the Commonwealth.

(6) Where required pursuant to section 5704(2)(iv), the interception was made without prior procurement of a court order or without probable cause.

18 Pa.C.S.A. § 5721.1(b).

In this case, none of those six situations apply. First, there were orders entered pursuant to section 5712. Second, there was probable cause to issue the orders. Third, the interception did not materially deviate from the requirements of the orders. Fourth, the orders were not issued pursuant to section 5704(2). Thus, the only colorable argument supporting suppression is that the orders were materially insufficient on their face. I conclude, however, that suppression is not warranted on this ground.

Pertinent federal case law supports this conclusion. In ***United States v. Donovan***, 429 U.S. 413 (1977), the government had probable cause that the defendant would be overheard on a wiretap, however, it failed to include

the defendant, a known individual, in the wiretap authorization order. The Supreme Court of the United States held that such error did not require suppression of the evidence against the defendant. *Id.* at 436 n.24. Instead, it concluded that the order was valid and that the defect was not material. Although **Donovan** dealt with a Title III wiretap under federal law, I find its rationale persuasive. The orders in this case listed everything necessary to lawfully intercept Appellant's communications with DiMatteo. Although the orders failed to list Appellant as a known individual, this was a minor error in drafting the orders and did not rise to the level of a material defect. Finally, to the extent that Appellant argues that exclusion of his name from the orders violated his constitutional rights, **Donovan** makes clear that such an omission does not constitute an unconstitutional search. Therefore, I would affirm the trial court's suppression ruling on this basis.

As to the second issue raised on appeal, I fully concur with the reasoning set forth in the trial court opinion and adopted by the learned majority. I write separately on this issue, to emphasize my belief that the evidence of DiMatteo's other drug deals was admissible notwithstanding Rule 404(b). In this connection, I note that a substantial component of the Commonwealth's theory in this case was that Appellant committed, by way of telephone, dozens of crimes involving the solicitation of delivery of controlled substances by DeMatteo. To meet its burden of proof, then, the Commonwealth needed to prove that DeMatteo was a viable source of the

drugs Appellant sought to acquire for resale. Thus, in this case, the cocaine showed to the jury, and other evidence Appellant objected to, was admissible to prove that DeMatteo was such a viable source. Accordingly, I would affirm on this basis in addition to the basis set forth in the trial court's opinion.

As to Appellant's last issue, I agree with the learned Majority that our Supreme Court has "specifically rejected [Appellant's] suggestion to apply the maxim of *expression unius est exclusion alterius*." Majority Memorandum at 20 (citation omitted). I also agree that 61 Pa.C.S.A. § "4503(1) encompasses all violent behavior in addition to the enumerated crimes contained in [s]ection 4503(2)-(6)[.]" **Id.** (citation and internal quotation marks omitted; emphasis removed). I respectfully disagree, however, with the learned Majority's holding that the trial court erred or abused its discretion in finding that Appellant was not eligible to receive an RRRI reduced sentence.

Two prior appellate decisions in Pennsylvania have addressed a question similar to that which we confront in the present case. In **Commonwealth v. Chester**, 101 A.3d 56 (Pa. 2014), our Supreme Court concluded that a prior conviction for first-degree burglary constituted violent behavior that disqualified a defendant's eligibility for a reduced minimum sentence under the RRRI statute. In reaching this conclusion, the Court noted the historical treatment of burglary as a crime of violence in

Pennsylvania. *Id.* at 64. In addition, the Court noted that all burglaries qualify as aggravating circumstances for capital sentencing purposes. *Id.* The Court also observed that first-degree burglary, unlike its second-degree counterpart, is listed as a crime of violence under the recidivist minimum sentencing provision in 42 Pa.C.S.A. § 9714(g) and that first-degree burglary precludes an offender from participation in motivational boot camp pursuant to 61 Pa.C.S.A. § 3903. *Id.* Lastly, based upon its determination that first-degree burglary "contemplates [a] potential for confrontation [that second-degree burglary does not]," the Court concluded that first-degree burglary constitutes "violent behavior" under § 4503(1). *Id.* at 65.

Prior to *Chester*, this Court considered whether second-degree burglary constituted disqualifying violent behavior in *Commonwealth v. Gonzalez*, 10 A.3d 1260 (Pa. Super. 2010). In *Gonzalez*, we observed that second-degree burglary was not included as a crime of violence under 42 Pa.C.S.A. § 9714, that it did not disqualify an offender from participation in motivational boot camp under 61 Pa.C.S.A. § 3903, and that it did not constitute a personal injury crime within the definition of 18 Pa.C.S.A. § 11.103. *Gonzalez*, 10 A.3d at 1263. Accordingly, we found Gonzalez

eligible to receive a reduced RRRI sentence notwithstanding his second-degree burglary conviction.[1]

My review of **Chester** and **Gonzalez** leads me to conclude that Appellant is not eligible to participate in the RRRI program. A conviction for resisting arrest presupposes a situation in which an offender's conduct invites a forceful response on the part of a law enforcement officer. This circumstance draws into play the concerns surrounding first-degree burglary, not second-degree burglary. Where resisting arrest has been charged, no fewer than two individuals, with wholly divergent goals, are presently engaged in a confrontation. On one hand, the suspect seeks to avoid capture and arrest. On the other hand, the officer(s) seek to subdue the subject. A conviction results where the defendant either creates a substantial risk of bodily injury to the officer or anyone else or employs means that require substantial force to overcome. **See** 18 Pa.C.S.A. § 5104. The statute clearly contemplates the potential for confrontation and, as such, the risk of a violent encounter is direct and immediate and neither remote nor speculative. For this reason, I agree with the trial court that Appellant should be excluded from the RRRI program.

I am unpersuaded by the Majority's efforts to demonstrate that a conviction for resisting arrest does not involve a history of violent behavior.

---

[1] In **Chester**, the Supreme Court stated that it would not consider whether a second-degree burglary conviction demonstrated a history of violent behavior for purposes of § 4503.

Among other things, the Majority reviews the emergence of the current resisting arrest statute and points out that the statute now does not impose liability for minor scuffles or efforts to flee from an officer. **See** Majority Memorandum at 26-27. If the Majority offers this analysis to prove that resisting arrest somehow does not involve violent behavior, then these observations miss the mark. By definition, a conviction for resisting arrest **excludes** instances involving only minor scuffles or efforts to flee from an officer. Thus, an individual convicted of resisting arrest has previously created a substantial risk of bodily injury to an officer or someone else or engaged in conduct that required substantial force to overcome. I am unable to agree that this conduct does not involve a history of violent behavior.

Moreover, while I understand that there may be situations in which individuals employ so-called "passive resistance" in which they do not overtly or aggressively attack an arresting officer, I cannot agree that this conduct salvages their eligibility for participation in the RRRI program. In **Chester**, our Supreme Court noted that, "the fact that [a]ppellant did not actually engage in any violent acts while committing first-degree burglary does not render the crime 'non-violent.'" **Chester**, 101 A.3d at 65. Instead, it is the offender's conduct in merely committing a crime that "invites dangerous resistance" and the potential for a forceful response that makes the offense a violent one. **Id.** By every metric, then, a prior

conviction for resisting arrest disqualifies an offender for RRRI participation.

For each of these reasons, I respectfully dissent from the Majority's decision to remand this case for resentencing.