Commonwealth of Pennsylvania, Department of Public Welfare *v.* Joseph Malinsky, Appellant.

194

Argued March 5, 1976, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*Earle D. Lees, Jr.,* for appellant.

*Harold Dunbar,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, August 26, 1976:

This is an appeal by Joseph Malinsky from a decision of the Department of Public Welfare sustaining the Clearfield County Board of Assistance in its denial of public assistance benefits to appellant because of his failure to comply with certain of the Department's rules and regulations concerning employment. The issue is whether the Department erred by holding that Malinsky was ineligible for assistance because of his inability and unwillingness to seek and retain suitable employment as required by Section 3182 of the Department of Public Welfare Manual.[1] We hold that the Department did not err and affirm.

---

[1] That section, dealing with eligibility regulations relating to employment, reads as follows:

"Every employable person is required, as a condition of eligibility for assistance, to seek, accept and retain employment within the level of his capacity. The effect of failure to retain employment on eligibility for assistance depends on the following factors:

Malinsky had consulted the Clearfield County Board of Assistance in early 1975 about obtaining financial assistance. Pursuant to the CETA[2] program, the Board obtained custodial employment for Malinsky at the Holidaysburg State Hospital. During the short period of his employment (February 27, 1975 through March 28, 1975), Malinsky was absent from his work for four days[3] without sufficient excuse and without prior notification to his supervisors; he was observed urinating on the lawn of the hospital, he smoked cigarettes in violation of hospital regulations and was involved in several incidents with fellow employes. Such conduct culminated in his dismissal.

Appellant contends that the evidence presented to the Department was insufficient to support a finding that he had not met the requirements of Section 3182 because he had failed to make a sincere effort to seek and retain employment. "An adjudication of the Department of Public Welfare will be sustained if it is in accordance with law and is supported by sub-

———

the deliberateness and frequency of leaving employment, and the person's efforts to seek other employment. An employed person who has employment that does not provide for himself, and his spouse and minor or incompetent children, is required to seek and accept additional or more remunerative work consistent with his capacity and the opportunities for such work.

"An employable person who fails to meet these requirements is ineligible for assistance, as is his spouse and minor or incompetent adult children living with him.

"The employable person and his dependents remain ineligible until the employable person demonstrates to the satisfaction of the County Assistance Office that he is making a sincere effort to get and hold employment."

[2] Comprehensive Employment Training Act, a twelve-month federally-funded work program.

[3] While the attorney examiner found as a fact that appellant had been absent for four work days, the testimony taken at the proceedings before the Board would indicate an absence of five work days out of twenty.

stantial evidence." *Krug v. Dept. of Public Welfare,* 9 Pa. Commonwealth Ct. 563, 565, 308 A.2d 168 (1973). "Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion." *Parago v. Dept. of Public Welfare,* 6 Pa. Commonwealth Ct. 16, 20, 291 A.2d 923, 926 (1973). "The fact finder must resolve conflicts in testimony and is not required to accept the testimony of any witness, and it is not the function of a reviewing court to weigh conflicting testimony or to judge the weight and credibility of the evidence." *Palmer v. Dept. of Public Welfare,* 5 Pa. Commonwealth Ct. 407, 413, 291 A.2d 313, 317 (1972).

Appellant's own testimony supports the finding of excessive absence from his job and his lack of a satisfactory excuse.

"MR. LEES [Malinsky's attorney]: Now during that time, you heard testimony that you missed five days of work, what was the reason for those absences?

MR. MALINSKY: Why they had me outside working and I got a cold and I went to the doctor and I got a shot of penicillin.

MR. LEES: What doctor did you go to?

MR. MALINSKY: I don't know the guys name, I think it was around a five or six dollar charge, and that's all I know.

MR. LEES: Where was his office located?

MR. MALINSKY: Main Street in Hollidaysburg. I would say the main street, it could be some other street, but I classify it as the main street because well, it looked like the main drag to me."

No physician's statement of treatment was ever offered; appellant could recall neither the physician's name nor his address. Malinsky gave no prior report of his illness to his supervisors; he did not call in sick or otherwise inform them of his intent to absent himself from work.

Appellant admittedly smoked on the job in violation of hospital rules. That he urinated on the lawn of the hospital is uncontested:

"MR. LEES: . . . Did you relieve yourself on the hospital grounds?

MR. MALINSKY: Well it was dark, it was 7 o'clock at that time of year it was purely dark and I ain't a black man."

It is also apparent that Malinsky made ethnic remarks to the staff:

"MR. MALINSKY: Well after the colored guy threatened me severely well I walked over to the guy I was working with, I said, hell I said I didn't say nothing to him, I don't see why I have to take that kind of talk or shit from a goddamn nigger. And he went over and told the colored that I told him he was a nigger."

On the foregoing evidence alone, the hearing examiner was justified in finding that Malinsky's unacceptable behavior resulted in his dismissal from the Hospital and in concluding that he was not making sufficient effort to retain employment. Additionally, the Hospital Superintendent and Personnel Officer wrote letters to the Board and talked by telephone to the case worker who testified at the hearing, reporting the circumstances which led them to conclude that Malinsky was unsuitable for employment at the Hospital: *viz.* complaints from his immediate supervisor and co-workers which were consistently received in the Personnel Office and ranged from Malinsky's inability to complete work assignments to his unacceptable language and ethnic remarks directed to both residents and staff. Assuming, *arguendo*, that these statements are hearsay as appellant contends,[4] they do not serve

---

[4] It is quite possible that such reports could have qualified as business records had any formal offer of proof been required.

as the sole basis for the findings but merely lend support to the undisputed facts to which appellant himself testified. Such evidence, even if hearsay, may be admitted in an adjudication of an administrative agency for the additional light it may shed on the matter. *Bleilevens, v. Pa. State Civil Service Commission,* 11 Pa. Commonwealth Ct. 1, 312 A.2d 109 (1973).

The hearing examiner also concluded that Malinsky had failed to make a sincere effort to get employment after he was fired from his job at the Hospital. There was evidence that Malinsky had not registered with the Bureau of Employment Security subsequent to the firing, that he had moved without leaving a forwarding address and that efforts to contact him about employment relocation had been unsuccessful. Malinsky's explanation was that the Bureau had thrown his files away or hadn't registered him because they didn't like him. He also testified that he had located a job driving a truck but had lost it because he didn't receive his driver's license in time; he located a job with a painting contractor but refused it because he couldn't stand the height, even though he had done similar work in the past. He sought other painting jobs, but accepted none because he required as a condition of employment that he be allowed to work only at ground level. If the hearing examiner chose to disbelieve Malinsky's excuses and instead chose to believe the testimony of the Commonwealth witnesses, that was his prerogative; matters of credibility and weight of the evidence remain with the finder of fact.

After a thorough review of the record, we believe that substantial evidence existed upon which the hearing examiner could base his findings that appellant did not meet the eligibilty requirements for financial assistance.

We therefore

ORDER

AND Now this 26th day of August, 1976, the order of the Department of Public Welfare, dated September 4, 1975, denying benefits to Joseph Malinsky, is hereby affirmed.