Anthony J. Bovino, Petitioner *v.* The Board of School Directors of the Indiana Area School District, Respondent.

Argued June 10, 1977, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three. Judge KRAMER did not participate in this decision.

*Bart M. Beier,* for petitioner.

*Robert W. Lambert,* for respondent.

OPINION BY JUDGE CRUMLISH, JR., October 4, 1977:

This is an appeal by Anthony J. Bovino (Bovino), a tenured professional employe, from a decision of the Secretary of Education dated July 6, 1976, which sustained the dismissal of Bovino by the Board of School Directors of Indiana School District.

The Petitioner, Bovino, was a teacher of foreign languages in the Indiana School District from 1970 until February of 1975. Bovino attained tenure status at the close of the 1971-72 school year.

In January of 1975 and again in February of 1975 Bovino made several comments to a female ninth-grade student which led to the filing of charges against Bovino by the School Board for his dismissal under Section 1122 of the Public School Code of 1949 (Code).[1] The young female student reported to her mother Bovino's alleged statements. On February 18, 1975, the mother of the child instituted criminal charges for harassment of her child by Bovino before the local district magistrate. The following day the Superintendent of the Indiana School District suspended Bovino without pay. On March 24, 1975, the School Board initiated numerous charges against Bovino. The gravamen of the charges was that Bovino's statements to the student were of such a nature as to constitute "immoral" and "cruel" conduct which would be grounds for the termination of Bovino's con-

---

[1] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §1-101 et seq.

tract with the Indiana Area School District under the aforementioned Section 1122 of the Code.

On the first occasion Bovino called a fourteen-year-old female student a "slut." At the hearings the student testified that she was extremely embarrassed by the statement made to her by Bovino and, further, she could not understand why he had called her a "slut." This incident was witnessed by another student.

The second incident occurred in Bovino's classroom where he implied to the same female student that she was a "prostitute." The remarks which Bovino made to the female student in the classroom were corroborated by fellow students seated near her.

There were two hearings convened by the School Board on the charges against Bovino and the testimony taken at those hearings was comprehensive. After the termination of the final hearing the School Board voted 8-0 that Bovino had committed two separate acts of "immorality" and "cruelty" with respect to the fourteen-year-old female student. The remaining charges against Bovino were dismissed as the Board concluded that there was not substantial evidence to support them.

On May 6th the Board notified Bovino that he was dismissed. On appeal to the Secretary of Education, the Board's decision was upheld. Bovino appealed from the decision of the Secretary to this Court and contends as one of his grounds for reversal that the hearings before the Board of School Directors were not fair, impartial and unbiased.

Under the Code, review by this Court of the Secretary's adjudication in the dismissal of a professional employe is to determine whether the Secretary committed an error of law or a manifest abuse of discretion. *Department of Education v. Great Valley School District*, 23 Pa. Commonwealth Ct. 423, 352 A.2d 252 (1976).

The Secretary concluded that the hearings before the School Board were conducted in an orderly and fair fashion. The witnesses were sequestered. The questions the Board members asked the witnesses were not prejudicial or biased but showed a genuine desire to elicit from the witnesses all of the pertinent information surrounding Bovino's statements to the complainant student. Bovino and his witnesses were given ample opportunity to present their version of what transpired and at no time during the proceedings were any of the witnesses curtailed in giving their testimony. Further, the testimony was confined to the issues raised in the statement of charges before the Board. This Court finds that the Secretary properly concluded that the hearings before the School Board were fair, impartial and unbiased.

Bovino also contends that the Secretary erred when he found that there was substantial evidence presented to warrant his discharge. We disagree with Bovino's position.

The incidents between Bovino and the young female student were witnessed by other students. These students testified at the hearings. Although the witnesses were sequestered, their testimony, even with respect to minor details, was very consistent.

Adjudications of administrative agencies will be sustained on appeal if in accordance with law and supported by substantial evidence. Substantial evidence is the relevant evidence a reasonable mind can accept as adequate to support a conclusion, and we as the reviewing Court will not weigh conflicting testimony or judge the weight and credibility of the evidence. *Department of Public Welfare v. Malinsky,* 26 Pa. Commonwealth Ct. 193, 363 A.2d 863 (1976).

There was substantial evidence presented to the School Board to warrant the Secretary's conclusion that Bovino called the complainant a "slut" and im-

plied through his statements to her that she was a "prostitute."

Bovino questions whether the above statements in fact constitute "cruelty" or "immorality" both of which are approved causes for discharge of a professional employe. Section 1122 of the Code provides in part that:

The only valid causes for termination of a contract heretofore or hereafter entered with a professional employe shall be immorality, incompetency, intemperance, cruelty. . . .

Immorality has been defined by the Supreme Court of Pennsylvania in *Horosko v. Mount Pleasant Township School District*, 335 Pa. 369, 372, 6 A.2d 866, 868 (1939), as

not essentially confined to a deviation from sex morality; it may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and elevate.

Bovino, as is readily discernible from the evidence, called the young female student a "slut" and "prostitute." This language offends the morals of the community and certainly is conduct which does little to foster and elevate the ideals and healthy attitudes the teacher should instill in his students. Such statements are crude and ill-advised when used by a teacher in a public school environment. Thus, we conclude that the determination made by the Secretary that the statements were immoral is well-founded.

A definition of "cruelty" was provided by this Court in *Caffas v. The Board of School Directors of the Upper Dauphin Area School District*, 23 Pa. Commonwealth Ct. 578, 582, 353 A.2d 898, 900 (1976).

Our definition is quite explicit and is as follows:

[Cruelty is] the intentional and malicious infliction of physical suffering upon living crea-

tures, particularly human beings; or, as applied to the latter, the wanton, malicious, and unnecessary infliction of pain upon the body, or the feelings and emotions; abusive treatment; inhumanity; outrage.

Obviously, the statements which Bovino made to the female student inflicted trauma and pain upon her person. She stated she was embarrassed and upset by Bovino's conduct. As noted in *Caffas, supra,* denials of intent to cause harm may be rejected if belied by the actor's demonstrated conduct. We agree that Bovino's actions also fall within the meaning of "cruelty."

Bovino raises the issue of whether Section 1122 is constitutional. Bovino argues that the section is vague and, therefore, runs contra to the due process mandate of the Fourteenth Amendment. He further contends that the statute deters his free expression of speech which is constitutionally protected by the First and Fourteenth Amendments. These issues were not raised in any prior stage of the proceedings. However, pursuant to Pa. R.A.P. 1551, questions involving the validity of a statute may be raised for the first time on the appeal of a quasi-judicial order.

We conclude that the provision of the Code listing causes for termination of a contract with a professional employe, specifically "cruelty" and "immorality," is not vague or indefinite.

The Supreme Court of Pennsylvania in the landmark case of *Albert Appeal,* 372 Pa. 13, 92 A.2d 663 (1952), addressed itself to whether or not Section 1122 of the Code was unconstitutional because of vagueness and indefiniteness. The Court speaking through Chief Justice STERN noted that the causes for termination, namely, the terms "immorality" and "cruelty" were not vague or indefinite. Chief Justice STERN stated that, although exact and precise definitions of "im-

morality" and "cruelty" were illusory, their applica-
tion to specific situations involved no real difficulty
and that the courts of Pennsylvania have frequently
upheld dismissals for "immorality" and "cruelty" un-
der this section of the Code. Both the Commonwealth
Court and the Supreme Court have provided defini-
tions for "cruelty" and "immorality." *Caffas, supra*
and *Horosko, supra.* A statute is not vague if a per-
son of ordinary intelligence is capable of determining
what conduct is proscribed. *See Pennsylvania State
Harness Racing Commission v. Dancer,* 16 Pa. Com-
monwealth Ct. 575, 578, 333 A.2d 196, 198 (1975). Bo-
vino's conduct is obviously proscribed by Section 1122.

Bovino argues that Section 1122 infringes up-
on and abridges his freedom of speech rights guaran-
teed by the First and Fourteenth Amendments. We
disagree.

There is no question that Pennsylvania has the
right and power to regulate for the furtherance of
legitimate state interests. The Constitution of the
Commonwealth, Article 10, Section 1 (1874), provides
that "The General Assembly shall provide for the
maintenance and support of a thorough and efficient
system of public schools." Certainly it can be conceded
that our public school system is a most vital feature of
our governmental and democratic system. In order
to accomplish the end of attaining a "thorough and
efficient system" the Legislature can prescribe quali-
fications for teachers with respect not only to their
academic attainments but also their moral characters.
*Albert Appeal, supra.*

In *Adler v. Board of Education of the City of New
York,* 342 U.S. 485, 492 (1952), the United States Su-
preme Court said:

It is clear that such persons [employed or
seeking employment in the public schools] have
the right under our law to assemble, speak, think

and believe as they will. . . . It is equally clear that they have no right to work for the State in the School system on their own terms. . . . If they do not choose to work on such terms, they are at liberty to retain their beliefs and associations and go elsewhere.

There is no substantial or real question of the right of free speech in this case. Bovino is not being penalized as a private citizen because of his religious, political, economic or social beliefs. The concern here is with his rights as a teacher. The Legislature can proscribe certain types of behavior which are not conducive to a healthy environment for the students in public school systems. Section 1122 does not infringe on Bovino's right to free speech in any protected areas. The intendment of this section is not to curtail free speech but to protect an extremely vulnerable and sensitive segment of our society (students). Here the Legislature is protecting a legitimate state interest in determining whether Bovino has the requisite qualities of character to teach in its public school system. *See Baird v. State Bar of Arizona,* 401 U.S. 1, 7 (1970). In the present case, Bovino's dismissal, although based directly upon the words spoken to his student, was really the result of the shortcomings in his moral character which are reflected in his use of totally inappropriate language and conduct in the context of the teacher-student relationship.

Accordingly, we affirm the decision of the Secretary of Education.

Judge KRAMER did not participate in the decision in this case. *See* Pa. R.A.P. 3102(d).

ORDER

AND Now, this 4th day of October, 1977, the order of the Secretary of Education is hereby affirmed, and the appeal of Anthony J. Bovino is hereby denied.