**Commonwealth v. Mitchell**

562

*John Lynch, assistant district attorney,* for the Commonwealth.
*Emilio DiMatteo,* for defendant.

CRONIN, JR., *J,* July 26, 1993—Following a report to the Upper Darby Police Department on Sunday, June 21, 1992 at 9:49 p.m., Lieutenant Michael Kenney and Officer Mark Manley of the Upper Darby Police Department, proceeded to 7142 Stockley Road Upper Darby, Pennsylvania. Upon arriving at the above location, both officers observed the following: painted on the front walk the word "nigger," the letters "KKK"; and a cross painted under three dark marks; on each of the steps leading to the house was spray painted the word "nigger"; the front screen door had a painted cross with three marks above it; the patio was painted with the word "nigger" and a cross with three dark marks; the front walk had the word "nigger" and a cross with three dark marks; the front walk had the words "nigger get out" painted on it; the rear wall had painted the words "nigger get out or else" and a cross with the letters "KKK"; and, the rear door had the words "KKK Jungle Fever Death" and a cross painted on it.

The owners of 7142 Stockley Road, Upper Darby, Pennsylvania are James and Betty Jo Johnson, who had made settlement on the property on June 15, 1992, but had not occupied the home with their 7 year old daughter, Zena. The Johnsons are an interracial couple, James Johnson being Afro-American and Betty Jo Johnson being Caucasian. The Johnsons had not given the defendant

nor any other person permission to spray paint on their property.

On June 25, 1992, defendant, Duane Mitchell, was taken into custody by the Upper Darby Police, the defendant voluntarily waived, in writing, his right to counsel and his right to remain silent and freely gave a statement to the police. The defendant told the Upper Darby Police that he, the defendant, alone spray painted the above-mentioned words and symbols on the Johnson property located at 7142 Stockley Road, Upper Darby, Pennsylvania; at the time that he did the spray painting, he had been drinking.

Following a non-jury trial, held on December 22, 1992, defendant was convicted of the summary offense of criminal mischief and the offense of ethnic intimidation, graded as a misdemeanor of the third degree in accordance with 18 Pa.C.S. §2710(B).

Defendant filed timely post-trial motions, which were denied by the order of trial court dated May 17, 1993.

On June 4, 1993, the defendant was sentenced to one year probation on the charge of ethnic intimidation; ordered to complete 250 hours of community service; to pay restitution to the Johnsons; and, to pay the cost of prosecution. The defendant was sentenced to pay a fine of $150 for his conviction of the summary offense of criminal mischief.

On June 9, 1993, defendant filed an appeal to the Superior Court from the judgment of sentence entered by the trial court raising the following issues.

I. The trial court erred when it did not grant the defendant's motion for discharge on the basis that 18 Pa.C.S. §2710 (ethnic intimidation) is unconstitutional pursuant to both the First and Fourteenth Amendments to the U.S. Constitution and Article 1 Section 7 of the Constitution of the Commonwealth of Pennsylvania. The statute is unconstitutional on its face and as applied herein.

II. The trial court erred in finding the defendant guilty of criminal mischief as the evidence was insufficient to prove that tangible property was damaged in the employment of fire, explosions, or other dangerous means.

III. The court erred in finding the defendant guilty of criminal mischief as the evidence was insufficient to prove that the defendant caused pecuniary loss by deception or threat.

## I. THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S MOTION FOR DISCHARGE SINCE THE ETHNIC INTIMIDATION STATUTE 18 Pa.C.S. §2710 IS CONSTITUTIONAL

Defendant argues that the Pennsylvania Ethnic Intimidation Statute 18 Pa.C.S. §2710 is both unconstitutional on its face and that the statute was unconstitutionally applied in the instant case.

The Pennsylvania Ethnic Intimidation Statute, 18 Pa.C.S. §2710 defines criminal conduct as follows:

"(A) Offense Defined—A person commits the offense of ethnic intimidation if with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article or under chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under section 3503 (relating to criminal trespass) or under section 5504 (relating to harassment by communication or address) with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

"(B) Grading—An offense under this section shall be classified as a misdemeanor of the third degree if the other offense is classified as a summary offense. Otherwise, an offense under this section shall be classified one degree higher in the classification specified in section

106 (relating to classes of offenses) than the classification of the other offense.

"(C) Definition—As used in the section 'malicious intention' means the intention to commit any act, the commission of which is a necessary element of any offense referred to in subsection (A) motivated by hatred toward the race, color, religion or national origin of another individual or group of individuals."

When reviewing a challenge to the constitutionality of a statute, there is a strong presumption in favor of a finding of constitutionality of that statute. "An act of assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Commonwealth v. Garofalo,* 386 Pa. Super. 363, 370, 563 A.2d 109, 112 (1989); *Commonwealth v. Santiago,* 376 Pa. Super. 54, 65, 545 A.2d 316, 321 (1988); *Commonwealth v. Doty,* 345 Pa. Super. 374, 389, 498 A.2d 870, 876 (1985). Moreover, legislative enactments are presumed to be constitutionally valid and legislative enactments must be followed unless a court of competent jurisdiction finds them to be unconstitutional. *Pennsylvania Federation of Teachers v. School District of Philadelphia,* 506 Pa. 196, 200, 484 A.2d 751, 754 (1984); *Commonwealth v. Robinson,* 497 Pa. 49, 52, 438 A.2d 964, 966 (1981).

*A. The Pennsylvania Ethnic Intimidation Statute Violates Neither the U.S. Constitution nor the Constitution of the Commonwealth of Pennsylvania Since Its Prohibitions Are Directed at Criminal Conduct Rather Than Speech*

Title 18 Pa.C.S. §2710 does not by a clear and complete reading of the statute punish any constitutionally protected activity. The statute does not punish constitutionally protected thoughts or beliefs. The statute applies to certain criminal acts committed by a defendant wherein there lies a malicious intent directed at a victim's race, color, religion or national origin. In the instant case it does

not matter that the defendant, Duane Mitchell hated the idea of having an interracial couple living in his neighborhood or why he hated such an idea; it only matters that Duane Mitchell discriminated against Mr. and Mrs. Johnson by intentionally defacing their property because Mr. Johnson is black and Mrs. Johnson is white.

"...where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy." *R.A.V. v. City of St. Paul,* 120 L.E.2d 305, 112 S.Ct. 2538 (1992)

## B. The Pennsylvania Ethnic Intimidation Statute Is a Valid Exercise of State Police Powers and Furthers a Compelling State Interest of Preventing Hate Crimes

If one assumes that 18 Pa.C.S. §2710 applies to any expression at all, the enactment of this statute is a valid exercise of state police powers. The U.S. Supreme Court has said:

"...when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision adheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and, if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien,* 391 U.S. 367, 20 L.E.2d 672, 88 S.Ct. 1673 (1968)

The government's purpose is the controlling consideration. A regulation that serves purposes that are not related to the content of speech is deemed to be neutral even if it has some incidental effect on speech. *Ward v. Rock Against Racism,* 491 U.S. 781, 105 L.E.2d 661, 109 S.Ct. 1746 (1989); *Renton v. Playtime Theatres Inc.,* 475 U.S. 41, 47-48, 89 L.E.2d 29, 106 S.Ct. 925 (1986). The Pennsylvania Ethnic Intimidation Statute meets the necessary constitutional requirements since it intends to punish acts directed at victims because of their race, color, religious background or national origin and it does not intend to punish the right of free expression of the accused.

The appellate courts of this Commonwealth have recognized the legitimate objectives of legislation and the legitimate governmental interest implicit in those objectives. See *Long v. 130 Market Street Gift & Novelty of Johnstown,* 294 Pa. Super. 383, 440 A.2d 517 (1982) and *Kacar Inc. v. Zoning Hearing Board of the City of Allentown,* 60 Pa. Commw. 582, 432 A.2d 310 (1981). It should be noted that these cases applied the rational basis test to the issue of equal protection under the Constitution of the Commonwealth of Pennsylvania to reach their holdings. However, in each case, the appellate court recognized a legitimate Commonwealth interest that was articulated in clear and precise legislative terms and did not prohibit all expression, but merely regulated that which was in the legitimate exercise of state police powers.

By enacting 18 Pa.C.S. §2710, the Commonwealth of Pennsylvania wishes to ensure the basic human rights of individuals who have historically been subjected to discrimination by prohibiting the act of discrimination rather than the opinion that leads to that discrimination. The attorney general recently compiled a hate crimes report covering the 1990-1992 period.[1] The report pre-

---

1. Office of the Attorney General, 1990-92 Hate Crimes Report 2-3.

sents several important characteristics of hate crimes in Pennsylvania:

(1) Reported hate crimes grew by 60 percent from fiscal year 90-91 to fiscal year 91-92.

(2) Afro-Americans and other minorities are more than 10 times more likely than other whites to be victims of hate crimes.

(3) Even though African-Americans constitute only 10 percent of the population of the Commonwealth, African-Americans constitute 45 percent of the victims of hate crimes.

(4) While most hate crimes occur in the Commonwealth's two major urban areas, Philadelphia and Allegheny Counties, they are surfacing in increasing numbers in rural suburban, and smaller urban communities. Delaware County has the fifth highest incidence of hate crimes among all of the counties in the Commonwealth.

The attorney general's report evidences that hate crimes and ethnic intimidation are an increasing problem in Pennsylvania. The Commonwealth's interests in reducing the number of hate crimes and in protecting basic human rights among members of its population are clearly compelling and the Pennsylvania Ethnic Intimidation Statute is a reasonable exercise of police power to accomplish this end.

### C. The Commonwealth's Ethnic Intimidation Statute Survives the Overbreadth Analysis

The overbreadth analysis should be employed by the courts sparingly and as a last resort. Recently, the U.S. Supreme Court decided the case of *R.A.V. v. City of St. Paul supra,* wherein the Supreme Court struck down the St. Paul, Minnesota Bias-Motivated Crime Ordinance which prohibited the display of symbols that a person knows or has reason to know would arouse anger, alarm or resentment in others on the basis of race, color, creed, religion or gender. The Supreme Court held that the St. Paul ordinance was facially invalid under the First Amendment and that St. Paul's desire to communicate to minority

groups that it does not condone the "group hatred" of bias motivated speech does not justify selectively silencing speech on the basis of its content. The invalidation of the ordinance occurred because the ordinance singled out, from among other "fighting words," symbolic speech that expressed messages of "bias-motivated" hatred. The St. Paul ordinance was directed toward the expressive content of the proscribed conduct, whereas Pennsylvania's Ethnic Intimidation Statute is directed toward the discriminatory criminal act rather than the expression of ideas.

Where the law deters protected speech to some extent, its invalidation is not justified unless the overbreadth of the statute is real and substantial judged in relation to the statutes plain legislative sweep. In *Broadrick v. Oklahoma* 413 U.S. 601, 37 L.E.2d 830, 93 S.Ct. 2908 (1973) the U.S. Supreme Court stated:

"... facial overbreadth adjudication is an exception to our traditional rules of practice and its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the state to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct."

The St. Paul ordinance was deemed fatally overbroad because, although the ordinance reached unprotected conduct, it also criminalized a substantial amount of expression that was shielded by the First Amendment. The Pennsylvania Ethnic Intimidation Statute does not reach a substantial amount of protected expression. The statute is sufficiently narrow and specific. The statute does not apply to a race, color or religion neutral crime during which the defendant utters a racial slur. To the contrary, the statute requires that the commission of the crime, in this case criminal mischief, is evidence of the malicious intent. See *Long v. 130 Market Street Gift & Novelty of Johnstown, supra* at 404, 440 A.2d at 528; *Kacar Inc. v. Zoning Hearing Board of the City of Allentown, supra* at 586 432 A.2d at 312, 313. Again it should be noted

that these cases turned on the issue of equal protection. However, in each case the appellate court commented on the narrowness of the regulation of First Amendment pursuits.

Even if the Pennsylvania Ethnic Intimidation Statute infringes on some area of protected speech, it does not rise to the level of overbreadth required for invalidation. A substantially overbroad law has the potential to chill the exercises of expressive activity. In *Board of Airport Commissioners of Los Angeles v. Jews For Jesus Inc.* 482 U.S. 569, 96 L.E.2d 500, 107 S.Ct. 2568 (1987), the Supreme Court invalidated a resolution which banned all First Amendment activities within an airport terminal. Because the resolution reached the totality of expressive activity, no conceivable governmental interest could justify it. The Pennsylvania Ethnic Intimidation Statute does not reach the totality of expressive activity. The statute is limited to a specific set of crimes. Expression or conduct that does not rise to the level of one of the crimes included within the statute is unhindered. There is no realistic danger that the statute will significantly compromise recognized federal or Commonwealth constitutionally protected rights of parties not before the court and therefore the statute passes the overbreadth analysis. See *City of Los Angeles v. Taxpayers For Vincent,* 466 U.S. 789, 80 L.E.2d 772, 104 S.Ct. 2118 (1984).

The First Amendment does not forbid the use of words to establish the elements of a crime or to prove the defendant's intent. See *United States v. McInnis,* 976 F.2d 1226 (9th Cir. 1992) (defendant's shouting of racial epithets at black neighbors admissible to establish his racial hatred and his acting on that hatred in firing gun at neighbors, thus interferring with their occupancy of their home on the basis of race, in violation of 42 U.S.C. 3631); *United State v. Gresser,* 935 F.2d 96 (6th Cir. 1991) (shouting of racial epithets admitted in prosecution based on cross burning outside a black family's residence) *cert. denied,* 112 S.Ct. 239 (1991); *United State v. Redwine,* 715 F.2d 315 (7th Cir. 1983) (prior racist comments admissible to show racially motivated harassment and fire-

bombing of black family's house), *cert. denied,* 467 U.S. 1216 (1984). The best available evidence often comes from what a defendant expresses. Any issue that requires proof of the defendant's intent may depend on proof of the spoken or written word or expressive conduct. If evidentiary use of speech violated the Constitution of the United States and/or Commonwealth of Pennsylvania, much of criminal law would be unenforceable. In *Street v. New York,* 394 U.S. 576, 22 L.E.2d 572, 89 S.Ct. 1354 (1969), the United States Supreme Court ruled that a state may not directly punish protected speech, but it noted that "... nothing in this opinion would render the conviction impermissible merely because an element of the crime was proved by the defendant's words rather than in some other way." See also, *Cox v. Louisiana,* 379 U.S. 559, 13 L.E.2d 487, 85 S.Ct. 466 (1965).

Proof of discrimination is the same. The U.S. Supreme Court has found no constitutional bar to using the defendant's speech in assessing claims of discrimination. See *e.g. Price Waterhouse v. Hopkins,* 490 U.S. 228, 104 L.E.2d 268, 109 S.Ct. 1775 (1989). The courts of this Commonwealth have upheld the dismissal of a public school teacher for "immorality" and "cruelty" holding that a teacher's right of free speech was not infringed even though the teacher's dismissal was based directly on his words spoken to a female student. *Bovino v. Board of School Directors of Indiana Area School District,* 32 Pa. Commw. 105, 377 A.2d 1284 (1977). In that case, Judge Crumlish stated:

"The legislature can proscribe certain types of behavior which are not conducive to a healthy environment for the students in public school systems. Section 1122 does not infringe on Bovino's right to free speech in any protected areas. The intendment of this section is not to curtail free speech but to protect an extremely vulnerable and sensitive segment of our society (students)." *Id.* at 113, 377 A.2d at 1289

Likewise the Superior Court determined that solicitation to commit murder was not constitutionally protected speech. The Superior Court additionally noted that 18

Pa.C.S. §902 was not void for vagueness in that section 902 provided an ascertainable standard to guide conduct. *Commonwealth v. Helser,* 261 Pa. Super. 378, 396 A.2d 447 (1978). A statute authorizing an interception of personal telephone conversations with the consent of just one of the parties did not have an unconstitutional chilling effect on free speech, even if it forced criminals to engage in self-censorship when speaking about their criminal activities. *Commonwealth v. Harvey,* 348 Pa. Super. 544, 502 A.2d 679 (1985).

In the instant case, the Pennsylvania Ethnic Intimidation Statute does not prohibit or punish speech or expression. The words expressed by the defendant on the victims' property are relevant to the issue of "malicious intent" because of the victims' race. This evidence would have been admissible in the trial of the underlying crime of criminal mischief to establish intent; to demonstrate motive; or, to explain the circumstances surrounding the criminal activity and these uses would not have been barred by First Amendment to the U.S. Constitution nor Article 1, Section 7 of the Constitution of the Commonwealth of Pennsylvania.

## II. THE TRIAL COURT PROPERLY DENIED DEFENDANT'S MOTION FOR DISCHARGE SINCE THE APPLICATION OF THE PENNSYLVANIA ETHNIC INTIMIDATION STATUTE, 18 Pa.C.S. §2710 IS CONSTITUTIONALLY PERMISSABLE

Defendant argues that it is unconstitutional to enhance the defendant's criminal penalty because of defendant's "malicious intention." The First Amendment does not bar consideration of the defendant's association or belief when they are relevant to a legitimate sentencing consideration. The U.S. Supreme Court noted in *Dawson v. Delaware,* 503 U.S. 159, 117 L.E.2d 309, 112 S.Ct. 1093 (1992) that sentencing courts are able to draw on a "... wide range of relevant material..." Even though

the U.S. Supreme Court held that Dawson's membership in the Aryan Brotherhood was inadmissible because Dawson's affiliation in the Aryan Brotherhood was at best an example of Dawson's abstract beliefs and not demonstrative of the element of racial hatred in the murder, the Supreme Court later concluded that "... the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.* 112 S.Ct. at 1097. This language suggests that the penalty enhancement must be based on evidence that the specific crime for which the defendant is convicted is in fact due to the "malicious intention" proscribed by the Ethnic Intimidation Act. Therefore, a consideration of a racial intent is a constitutionally permissible consideration when determining an appropriate sentence in a federal jurisdiction and this serves to support the penalty provision of the Pennsylvania Ethnic Intimidation Statute.

Recently the U.S. Supreme Court upheld a Wisconsin statute which provided for the enhancement of a defendant's sentence whenever he intentionally selected his victim based on the victim's race. *Wisconsin v. Mitchell*, 124 L.E.2d 436, 113 S.Ct. 2194 (1993). Chief Justice Rehnquist delivering the opinion for a unanimous court stated:

" ... the Wisconsin statute singles out for enhancement bias-inspired conduct because this conduct is thought to inflict greater individual and societal harm. For example, according to the state and its amici, bias-motivated crimes are more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest.... the state's desire to redress these perceived harms provides an adequate explanation for its penalty-enhancement provision over

and above mere disagreement with offenders' beliefs or biases. As Blackstone said long ago, 'It is but reasonable that among crimes of different natures those should be most severely punished, which are the most destructive of the public safety and happiness.' 4 W. Blackstone, Commentaries 16" 113 S.Ct. at 2201.

The Pennsylvania Ethnic Intimidation Statute authorizes an enhanced sentence when there is a connection between a specific crime and the defendant's malicious intent towards the victim's race, color, religion or national origin. It is interesting to note that if a person within the Commonwealth of Pennsylvania "... attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another" [2] that person would stand convicted of simple assault and could be sentenced to imprisonment for a maximum of two years[3] and made to pay a fine not to exceed $5000.[4] If, however, that same person committed the same acts and the victim was a "... teaching staff member, school board member, other employee or student of any elementary or secondary publicly funded educational institution, any elementary or secondary private school licensed by the department of education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school," [5] that person could be sentenced to imprisonment for the maximum term of 10 years[6] and made to pay a fine not to exceed $25,000.[7] In the second instance the punishment for the assailant's intentional assaultive behavior is elevated from a misdemeanor of the second degree to a felony of the second degree because of the status of the victim. The legislature clearly decided that the mainte-

---

2. 18 Pa.C.S.§2701(A)(1).
3. 18 Pa.C.S.§1104(2).
4. 18 Pa.C.S.§1101(4).
5. 18 Pa.C.S.§2702(5).
6. 18 Pa.C.S.§1103(2).
7. 18 Pa.C.S.§1101(1).

nance of a peaceful educational environment was an end that could be best preserved by the enhancement of the penalty for what, under other circumstances would be the elements of simple assault, to that of an aggravated assault.[8]

## III. THE EVIDENCE WAS SUFFICIENT TO FIND THE DEFENDANT GUILTY OF THE PREDICATE OFFENSE OF CRIMINAL MISCHIEF

Criminal mischief is defined at 18 Pa.C.S. §3304 as follows:

"Section 3304 Criminal Mischief

"(A) Offense Defined — A person is guilty of criminal mischief if he:

"(1) damages the tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(A) of this title (relating to causing or risking catastrophe);

"(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property; or

"(3) intentionally or recklessly cause another to suffer pecuniary loss by deception or threat." 18 Pa.C.S. §3304(A)

The defendant argues that the evidence was insufficient to prove that tangible property was damaged in the employment of fire, explosion, or other dangerous means.

1 Pa.C.S. §1903 states that "(A) Words and phrases shall be construed according to rules of grammar and according to their common usage;..."

Section 1 of 18 Pa.C.S. §3304 makes a person guilty of the crime of criminal mischief if that person either intentionally damages the tangible property of another; recklessly damages the tangible property of another; or negligently damages the tangible personal property of

---

8. See Pa. Legis. Journal, Senate, 2081-2082 (Sept. 30, 1980). Also *Commonwealth v. Scott* 376 Pa. Super. 416, 546 A.2d 96 (1988).

another in the employment of fire, explosives or other dangerous means listed in section 3302(A) of title 18.

In this case it is abundantly clear that the defendant spray painted the phrases and words mentioned herein on the Johnsons's home located at 7142 Stockley Road, Upper Darby, Pennsylvania and that the defendant did so without the permission of the Johnsons. Sufficient evidence exists to support a verdict if the evidence, when viewed in a light most favorable to the verdict winner along with all reasonable inferences drawn therefrom, allows a factfinder to find that all elements of a crime have been established beyond a reasonable doubt. *Commonwealth v. Robinson,* 399 Pa. Super. 199, 582 A.2d 14 (1990). The evidence was sufficient to prove beyond a reasonable doubt that the defendant intentionally damaged the tangible property of the Johnsons. A court must interpret a statute to ascertain the intent of the legislature. See 1 Pa.C.S. §1921(A)(B). It is clear from the use of the conjunctive "or" in section 1 of 18 Pa.C.S. §3304, that the legislature intended to punish either the intentional or the reckless or the negligent damaging of the tangible property of another person. The intentional spray painting of graffiti on the walls of a building is factually sufficient to support a conviction for criminal mischief. *In the Interest of Rodriguez,* 371 Pa. Super. 130, 537 A.2d 854 (1988).

It is equally clear that the commission of any of the other acts specified in either section 1 or section 2 or section 3 of 18 Pa.C.S. §3304 is sufficient to support a conviction for criminal mischief since the conjunctive "or" is used between sections 2 and 3 of 18 Pa.C.S. §3304 and the conjunctive "or" is to be given the same meaning and legislative intent as "or" is given with the states of mind (intent, reckless or negligent) in section 1 of 18 Pa.C.S. §3304. See 1 Pa.C.S. §1903(A), 1 Pa.C.S. §1921(A)(B).

For the foregoing reasons the defendant's post-trial motions were denied.